UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | **DOCKET NO. 1:05-cr-1067 KMK** |
| v. | * | |
| | * | **JUDGE KARAS** |
| **STEVEN EARL RIDDICK,** | * | |
| | * | |
| Defendant. | * | |
| | * | |

**OBJECTION TO GOVERNMENT'S 404(b) MOTION & MEMORANDUM IN SUPPORT**

COMES NOW, the Defendant, Steven Earl Riddick, by and through his attorney of record, and hereby files this objection to the Government's 404(b) motion. The Government is attempting to introduce in their case-in-chief a May 2001 felony forgery conviction of Steve Riddick.[1] The Defendant objects on several grounds.

**Objection #1**. The government has failed to comply with Rule 16 of the *Federal Rules of Criminal Procedure*. Rule 16(a)(1)(D) of the *Federal Rules of Criminal Procedure* mandates that the government provide to the Defendant "a copy of the defendant's prior criminal record that is within the government's possession, custody, or control if the attorney for the government knows--or through due diligence could know--that the record exists."

In the present case, the Government furnished to the Defendant a NCIC report without any 2001 forgery conviction. See *Affidavit of Bryan Hoss*, Exhibit "A". Now, at this late date,

---

[1] The government also alludes to some type of civil dispute between Riddick and the International Olympic Committee nine years ago in 1998. Upon belief, no criminal charges were ever filed. The government recklessly attempts to label this "fraud." However, the government can not and has not provided the Defendant with one document regarding such claim. In light of the government alluding to this in a footnote and making no argument in support of its admittance, the Defendant will not address the issue, unless this Court orders otherwise.

they attempt to introduce proof of such conviction and have not even supplied the Defendant with a copy of the judgment. See *Exhibits to Government's Letter dated March 19, 2007*, that include a Stipulation of Facts, a Norfolk State University Employee Pocket Travel Guide, a Memo from Steve Riddick to NSU Athletic Director dated March 16, 1999, a 4 page receipt from a Holiday Inn dated April 1998, the April 5, 2000 Forgery Indictment & a Sentencing Order signed July 13, 2001 (not attached to this objection).

Rule 16(d)(2) of the *Federal Rules of Criminal Procedure* provides a number of options for the court: "(A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; (B) grant a continuance; (C) prohibit that party from introducing the undisclosed evidence; or (D) enter any other order that is just under the circumstances."

Both the Sixth and Tenth Circuits have adopted several considerations that a Judge should consider before prohibiting a party from introducing such evidence. They are as follows:

> (1) the reasons the government delayed producing the requested materials, including whether or not the government acted in bad faith when it failed to comply with the discovery order; (2) the extent of prejudice to the defendant as a result of the government's delay; and (3) the feasibility of curing the prejudice with a continuance. *United States v. Muessig*, 427 F.3d 856, 864 (10th Cir. 2005) (citing *United States v. Gonzales*, 164 F.3d 1285, 1292 (10th Cir. 1999)); *United States v. Maples*, 60 F.3d 244, 247 (6th Cir. 1995).

Respectfully, there can be no good reason for the government's delay. A conviction is a public record and the government was required to produce it before using it. Now, they seek to introduce this conviction in their case in chief after only producing an NCIC report that omits it. See *Government's Letter date March 19, 2007*. The Defendant submits that he will suffer substantial unfair prejudice from introduction of such proof in their case-in-chief. Respectfully, the Defendant submits this Court should enter an Order excluding proof of such conviction.

**Objection #2**. The 2001 felony forgery conviction is not admissible because it is not similar to the present charges, not relevant under Rule 401 of the *Federal Rules of Evidence* and can only be characterized as propensity evidence, i.e. since the Defendant did it before, he must be guilty this time.

>Rule 404(b) of the *Federal Rules of Evidence* provides:
>
>Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The Second Circuit has recognized that 404(b) evidence should not be admitted unless (1) it is relevant to an actual issue in the case; and (2) unless its probative value is not outweighed by its unfair prejudice to the defendant. *United States v. O'Connor*, 580 F.2d 38, 40-43 (2nd Cir. 1978); *United States v. Benedetto*, 571 F.2d 1246, 1248 (2nd Cir. 1978); *United States v. Gubelman*, 571 F.2d 1252, 1254 (2d Cir. 1978); *United States v. Cavallaro*, 553 F.2d 300, 305 (2d Cir. 1977).

The Second Circuit has cautioned that there is no presumption that 404(b) evidence is relevant. *O'Connor*, 580 F.2d at 40; *Benedetto*, 571 F.2d at 1248. "(Caution) and judgment are called for, and a trial judge faced with an other crimes evidence problem should require the Government to explain why the evidence is relevant and necessary." *O'Connor*, 580 F.2d at 43. "Otherwise, of course, the accused might be convicted because of his participation in the other crimes rather than because he is guilty beyond a reasonable doubt of the crime alleged." *United States v. Manafzadeh*, 592 F.2d 81, 86 (2nd Cir. 1979). In cases involving intent and where intent is an element, courts have also cautioned that allowing prior convictions or prior bad acts for "intent" anytime "intent" is an element would essentially "swallow the rule against admission of evidence of prior misconduct." See *United States v. Ring*, 513 F.2d 1001, 1009 (6th Cir. 1975). This cautionary approach dates back several decades to the United States Supreme Court. Mr.

Justice Jackson in *Michelson v. United States*, 335 U.S. 469, 475-76, 93 L. Ed. 168, 69 S. Ct. 213 (1948), cautioned:

> The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.

The 2001 forgery conviction is based on a criminal act that occurred in October 1996. The criminal "act" itself and Riddick's intent during the criminal "act" is over 11 years old. It is this "intent" that the government submits is relevant today.

The 2001 forgery conviction was based upon Riddick and his assistant coach, Simon Hodnett, submitting vouchers to Norfolk State University ("NSU"). NSU would give money to their track coaches for expenses athletes and coaches incurred in attending meets. Coaches were required to bring back receipts to justify those amounts. Riddick admitted to creating two receipts in October of 1996, some 11 years ago, for $46.48 from Running, Etc for purchasing loose spikes and for $105.89 from Patrick's hardware to purchase spray paint. (Stipulation, ¶ 6(a) and ¶ 4(a) & (b)). He stated he had to create the receipts because he lost the originals. (Stipulation, ¶ 6(a)). He admitted that his writing appeared on a $90 receipt from the College of William and Mary but did not sign it. (Stipulation, ¶ 6(b)). He further denied knowing that receipts in paragraph 4(d)-(h) were forged when they were submitted. (Stipulation, ¶ 6(c)). These receipts that he denied knowledge were much more significant in amount and included approximately 7 receipts totaling $13,898.96. (Stipulation, ¶ 4(d)-(h)). Lastly, Riddick denied altering one other receipt, a receipt from the Holiday Inn that was attached to the Stipulation, but

did admit that he knew Hodnett had altered the Holiday Inn receipt when Hodnett turned it into the University. (Stipulation, ¶ 6(d)).

This criminal "act" from October 1996 and the deposit of three (3) counterfeit checks in April/May 2005 involve very different schemes. First, there is no allegation in the present case that Riddick himself forged any document. Rather, the criminal "act" alleged is that he merely deposited three (3) checks. The Defendant expects that the government will concede that he played no part in the altering or counterfeiting of any of these three (3) checks. Of some importance, Riddick was nearly 800 miles away in Miami, Florida at the time the first two checks were deposited in April 2005.

Respectfully, a scheme involving merely depositing checks is far different than a scheme in which someone creates receipts and turns them into his employer. They involve different "intents" all together. As the government has alleged in the indictment, Riddick's intent in the present case was substantial financial gain. He stood to gain hundreds of thousands of dollars. His "intent" in October 1996 was to justify his expenses to his employer. As he stated in the stipulation, he had to create the receipts because he lost the originals. (Stipulation, ¶ 6(a)). There is no similarities between forging a few receipts that total a few hundred dollars to satisfy the NSU Employee Pocket Travel Guide and depositing checks worth just under one million dollars.

In addition, just because the Defendant 11 years ago intentionally created receipts and turned them into NSU does not mean that such "act" has any bearing on his intent in April/May of 2005 when he deposited checks that turned out to be counterfeit. One event has no relation to the other and is so separated by time, inferring intent from one act to another is not logically persuasive.

Respectfully, this Court should exclude such conviction.

**Objection #3**.  The 2001 felony forgery conviction lacks of any probative value and is substantially outweighed by the danger of unfair prejudice under Rule 403 of the *Federal Rules of Evidence*.

The probative value of a criminal act from October 1996 on three (3) deposits in April/May 2005 is extremely low.  His intent some eleven (11) years ago on forging a few receipts totaling only a couple of hundred dollars has no bearing on depositing three (3) checks, especially when he was in Miami, Florida as the first two (2) checks were deposited.  Moreover, his "intent" from the criminal "act" in October 1996 was not monetary gain, as the government alleges in this case.  His "intent" from October 1996 was to satisfy what was required of him from NSU pocket travel guide.  This Court should find that there is no probative value from this 2001 felony forgery conviction.

The United States Supreme Court in *Old Chief v. United States*, 519 U.S. 172, 180, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997) defined "unfair prejudice" in the criminal context to refer to "the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."

The Defendant submits that such conviction falls squarely into the category of a "ground different from the proof specific to the offense charged."  Respectfully, juries do not understand elements of offenses or the subtle differences of the various white collar crimes.  A jury is going to believe that intent to commit forgery and intent to commit bank fraud are identical when in fact, they may involve varying schemes and facts with every case.  A jury is going to believe that a forgery conviction is the same as a bank fraud conviction.  A jury is going to think that if he did it before, he must be guilty.  That's the unfair prejudice of allowing this conviction as

contemplated in *Old Chief* and under Rule 403. The unfairness being that the jury will confuse the issues and convict him based on what they perceive to be identical "crimes."

Based upon this balancing test, this Court should conclude that the unfair prejudice substantially outweighs the danger of any probative value and find such conviction not admissible. Fed.R.Evid. 403.

**Objection #4**. The Defendant submits that the 2001 felony forgery conviction should be excluded based upon the reasons above. In the alternative, the Defendant submits that the 2001 felony forgery should not be admissible because the defense in the case is not intent and knowledge as asserted by the government but rather the credibility of the government's chief witness, Anthony Prince, and whether the Defendant conspired with Prince to commit the crimes of bank fraud and money laundering.

In the Second Circuit, the defendant can exclude the evidence of a prior conviction under Rule 404(b) by removing the issues of intent and knowledge from the case. *United States v. Figueroa*, 618 F.2d 934, 942 (2d Cir. 1980). The Second Circuit has made it clear that, although a defendant need not actually stipulate to the issue, such as knowledge or intent, to avoid "other acts" evidence of such mental states, the defendant must "express a decision" not to make it an issue, *United States v. Colon*, 880 F.2d 650, 659 (2d Cir. 1989) and he or she must give sufficiently clear notice to the Court and the government." *United States v. Tarricone*, 996 F.2d 1414, 1422 (2d Cir. 1993).

In the present case, the Defendant is charged with conspiracy to commit bank fraud and conspiracy to commit money laundering. He is also charged with substantive bank fraud counts. The primary issue and first issue in any conspiracy is whether two or more persons conspired, or agreed, to commit the substantive crimes. In other words in the present case, the Government

must prove beyond a reasonable doubt that Riddick conspired with Prince to commit the crimes of bank fraud and money laundering.

The Defendant would show unto the Court that the present indictment involves nine (9) New York Defendants who conspired to steal checks, steal identities, alter checks, create counterfeit checks, open fictitious bank accounts and deposit the checks into those fictitious accounts. The nine (9) New York Defendants are either family members of one another or close friends.

Mr. Riddick's only involvement in the alleged scheme is to deposit the checks into his own personal and business bank accounts. He did this on three (3) occasions in April/May 2005. One check was deposited into his personal account and the second and third checks were deposited into his business account, Steve Riddick Sports Training, Inc. In fact, Mr. Riddick did not even deposit the first two checks. He was in Miami, Florida at the time. Another individual, Tony Hockaday, actually deposited the checks into Riddick's personal account and then the 2nd check into his business account. These two checks have Mr. Hockaday's writing on the back "For Deposit Only…"

Steve Riddick is a 1976 Olympic Gold Medalist. He resides in Hampton, Virginia. He has no connections to New York. He does not know any of the nine (9) New York defendants. The government has not provided the Defendant with one shred of proof that there was any relationship or connection between the New York defendants and Mr. Riddick.

In fact, in their letter brief dated March 19, 2007 the government all but concedes this relationship. The government states that "the conduit between the New York-based conspirators and the Virginia-based conspirators was Anthony Prince. Shyne and Prince were friends from

8

having served time together in a federal penitentiary." See *Government Letter dated March 19, 2007*, p. 5.

Anthony Prince is a convicted drug dealer and purveyor of crimes against humanity. He has twice been convicted of felony drug charges. Upon information and belief, he was sentenced in the early-to-mid 90's for nearly 30 years and based upon a Rule 35 filed by the government, was let out sometime in 2003/2004, twenty (20) years early. Unfortunately for Mr. Prince, he wasn't re-habilitated and in fact, like many felons, he learned how to commit additional crimes through his introduction with Mr. Shyne. Nevertheless, Mr. Prince began dealing drugs again and was involved in Shyne's many counterfeit and fraudulent schemes. In fact, in August 2005, agents executed a search warrant on Prince's residence and recovered herion, marijuana, firearms and six (6) cell phones.

The government's only proof linking Riddick to the counterfeit nature of these three (3) checks is Prince. If the jury believes Prince beyond a reasonable doubt then the jury will certainly convict Mr. Riddick. However, if the jury does not believe Mr. Prince, there is no other direct chain linking Riddick to the New York Defendants who were the individuals who stole and altered the three (3) checks. Therefore, Prince's credibility is critical to this entire case.

In addition, Prince's credibility is critical to whether there ever existed any type of conspiracy to violate any law. Once again, if the jury believes Prince that he had an agreement with Riddick to violate the law then the jury will convict Riddick. Specifically, the elements of conspiracy require the Jury to determine whether or not Riddick and Prince ever agreed to commit the crimes of bank fraud and money laundering. This is the first element in the conspiracy. The government has to show an agreement, albeit, such agreement does not have to

be in writing. Respectfully, the Defendant submits that there is insufficient proof to prove such fact beyond a reasonable doubt given Mr. Prince's credibility.

Since Mr. Prince's credibility and whether a criminal agreement exist appear to be the significant issues of this case, the Government's assertion of intent and knowledge is not material or relevant. Therefore, the 2001 felony forgery conviction should not be admitted.

This is the exact same defense as *United States v. DeCicco*, 435 F.2d 478 (2nd Cir. 1970), the Second Circuit Court of Appeals reversed the judgments of conviction and remanded the matter back for a new trial in light of the Court allowing the government to introduce proof of a prior bad acts.

In *DeCicco*, two defendants burglarized a Philadelphia home and stole various pieces of artwork totaling $1,300,000. The government's chief witness against the defendant was an individual named Paul Parness who was named in the indictment as a co-conspirator but was not indicted. Paul Parness was a paid informer for the FBI and other law enforcement agencies and upon learning of the burglary, he contacted law enforcement and agreed to set up a meeting with a fictitious buyer.

The government admitted prior bad act evidence of the two defendants namely that DeCicco and Paul Parness had arranged to sell to an insurance company two paintings that had been stolen; that the agent recovered a half million dollars in paintings, art objects, and furs that had been fenced by the defendants; and that an Agent testified that he came to know the harborer of the stolen Pennsylvania art work "during an investigation of another matter involving the robbery of a coin collection."

The government argued that these instances of prior bad acts were admitted to show their intent to transport the stolen art works back to New York from Pennsylvania, a fact that satisfies the interstate element of the conspiracy charged in the Indictment.

In *DeCicco*, the Second Circuit noted, "almost the entire defense was the attempted impeachment of the Government's principal witness, Paul Parness." *DeCicco*, 435 F.2d at 484. The Second Circuit in reasoning that such prior bad acts should not have been admitted stating:

> The defendants did not admit stealing the art works and seek to avoid conviction on the narrow ground that they did not intend to transport the property in interstate commerce. Nor did any of the defendants claim to have been laboring under any misconception that the Hanley treasures were not stolen -- which would have been an incredible claim, indeed! Nor did the Government's case raise any substantial issue as to whether any of the defendants knew what they were doing or whether they knew what they intended to do with the art treasures. Therefore, the defense's only hope in this case was to attack Paul Parness's credibility and thereby to raise a reasonable doubt about the veracity of his account of what the defendants did or said. This is not a case where, if one accepts Paul Parness's testimony at face value, the statements and acts of the defendants lead to equivocal inferences. Parness's story, if believed, leads ineluctably to the conclusion that the defendants knew what they were doing, for had any of the defendants admitted the facts testified to by Parness any claim that they were ignorant of the nature of the goods or their intended destination for sale to a prospective buyer would be patently incredible.

See Also, *United States v. Manafzadeh*, 592 F.2d 81 (2nd Cir. 1979)(reversing a judgment and remanding matter back for a new trial when defense counsel offered to stipulate that if the jury found that Manafzadeh had participated in the creation or deposit of the forged checks, then he would concede that the acts had been done with the necessary criminal intent).

Based on the foregoing, this Court should exclude any reference to the 2001 felony forgery conviction.

**Objection #5.** In the alternative, if this court determines that such 2001 conviction is admissible, the Defendant submits that this court should not allow the government to introduce

11

the conviction in their case-in-chief.  In light of the arguments made above, the Defendant submits that such proof should not be admitted until the close of the Defendant's case.  The Court needs to hear all the proof including from Anthony Prince and by making such decision today, without hearing from Prince or any other witnesses, the Court will be speculating at the proof and may not reach a correct conclusion.  Moreover, Courts have routinely held that such 404(b) evidence should wait until the close of the Defendant's proof, especially if the Defendant attempts to remove intent and knowledge as issues in the case.

**Objection #6**.  The documents attached to the Government's letter dated March 19, 2007 contain inadmissible hearsay under Rule 801 of the Federal Rules of Evidence and violates the Defendant's rights under the 6th Amendment Confrontation Clause given that the documents contain statements from Simon Hodnett and others.  The Defendant submits that if the Court allows the conviction to be admitted, the only proof introduced should be a certified copy of the judgment which has not been provided to defense counsel.

Respectfully Submitted,

**DAVIS & HOSS, P.C.**

  s/Bryan H. Hoss
Bryan H. Hoss, TN BPR#  021529
ATTORNEY FOR STEVE RIDDICK
508 East 5th Street
Chattanooga, Tennessee  37403
423-266-0605
423-266-0687—Fax

**CERTIFICATE OF SERVICE**

     I hereby certify that a copy of the foregoing Motion was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

     This the 26th day of March, 2007.

                                              s/Bryan H. Hoss_____