Apr 04 07 12:02p    Steve Riddick    7572730420    p.2

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | DOCKET NO. 1:05-cr-1067 KMK |
| v. | * | |
| | * | JUDGE KARAS |
| STEVEN EARL RIDDICK, | * | |
| | * | |
| Defendant. | * | |

**AFFIDAVIT OF STEVE RIDDICK**

IN THE CITY OF HAMPTON)
STATE OF VIRGINIA)

STEVE RIDDICK, being first duly sworn, under penalty of perjury, deposes and says:

1. My name is Steve Riddick. I presently live at 205 Harbor Drive, Hampton, Virginia, 23661;

2. I am the above defendant in this case;

3. In June 2005, I hired Hunter W. Sims, Jr. to be my attorney in regards to various checks that are the subject of the Indictment in this case;

4. In June 2005, with my knowledge and consent, my attorney, Hunter Sims, contacted an Assistant United States Attorney in Norfolk, Virginia by mail and advised him that he represented me and my business, Steve Riddick Sports Training, Inc. I received a copy of this letter after Mr. Sims sent it to the AUSA;

5. On February 9, 2006, I was traveling to Fayetteville, Arkansas by airline;

6. I was planning on attending the Tyson Invitational track meet at the University of Arkansas;

7. I had three (3) athletes competing at the meet. The athletes were Aziz Zakari from Ghana, Myriam Mani from Cameroon, and Chris Brown from the Bahamas.

8. When I stepped off the plane, I walked to baggage claim. As I came down the escalator, I saw two uniformed police officers.

9. The officers had a photograph of me and asked if I was Steve Riddick. I advised that I was Steve Riddick and they asked me to follow them to their office;

p.2    423-266-0687    Davis & Hoss PC    Apr 04 2007 8:51AM

EXHIBIT
A

10. The officers took me to a security/air-port police office. I asked the officers why they were arresting me. The officers advised that they did not know why I was being arrested and that they were waiting on some paperwork. The officers, while I waited, retrieved my luggage and searched it.

11. After the paperwork arrived, the officers placed me in handcuffs and escorted me to their vehicle;

12. One of the original officers drove me to a county jail. I would estimate that I spent approximately two (2) hours with these officers. At no point did I ever initiate any conversation with them regarding these charges with the exception of asking them why I was being arrested;

13. Once I arrived at the jail, I was processed at the jail.

14. After I was processed, I took a shower and changed clothes. I was fingerprinted.

15. After a couple of hours, I was introduced to a federal agent. The agent had some paperwork and advised me that he knew nothing about the case. He did advise me what the general charges were. He asked if I wanted to talk with the US attorney's office who was handling the case. I agreed. At that point, he read to me my Miranda rights. I signed the form.

17. After I signed the Miranda form, I was taken to another office that apparently belonged to a uniformed officer.

18. I picked up the phone and Ms. Perry introduced herself and another gentlemen was on the line. It was apparently a three-way telephone call. At that point, I gave a statement.

19. At all times, I did not initiate the three way conversation. I was in custody and represented by an attorney. Since I was asked to talk to the AUSA by law enforcement, I agreed and we subsequently had a conversation.

FURTHER AFFIANT SAITH NOT.

STEVE RIDDICK

Sworn to and subscribed before me
this 4 day of April, 2007.
Harriet Thyne
NOTARY PUBLIC
My Commission Expires: 12/31/10