

C. Leland Davis
lee@davis-hoss.com

**Davis & Hoss, PC**
ATTORNEYS AT LAW

Bryan H. Hoss
bryan@davis-hoss.com

October 26, 2007

The Honorable Kenneth M. Karas
United States Courthouse
300 Quarropas Street—Room 533
White Plains, NY 10601

    Re:    **United States of America vs. Steven Earl Riddick, *et al*.**
            Docket No. 1:05-cv-1067 KMK

Dear Judge Karas:

    Please accept this letter pursuant to Rules 29 and 33 of the *Federal Rules of Criminal Procedure* as a Motion for Judgment of Acquittal or in the alternative, a Motion for a new trial.

    As grounds, the Defendant would show that Natasha Singh testified in the above referenced trial (herein referred to as the "*Riddick*" trial) on or about April 16-17, 2007 on behalf of the government. On September 5, 2007, co-counsel forwarded him a recently discovered copy of an Indictment in *United States v. Bartee, et. al*, Docket No. 06-Crim-832, dated September 20, 2006. *See* Indictment, Exhibit A.

    In *Bartee*, the United States indicted several defendants for bank fraud conspiracy, bank fraud and a money laundering conspiracy. The indictment alleges a conspiracy between the *Bartee* defendants and Douglas Shyne and Natasha Singh. Both Natasha Singh and Douglas Shyne were named defendants in the *Riddick* case. Although the *Bartee* indictment discusses Shyne & Singh at great length, they were not named as defendants in that case.

    The *Bartee* indictment specifically alleges that as a conspiracy the group "deposited, cashed and laundered unlawfully obtained checks." Clearly, the *Bartee* indictment includes checks that were not included in the *Riddick* case. In addition, two of the named *Bartee* defendants were from Richmond, Virginia. The Court will recall from the *Riddick* trial that both Riddick and Nathaniel Alexander, a co-defendant, were from Virginia.

    Upon information and belief, both prosecutors in the *Riddick* case prosecuted the *Bartee* defendants during a recent jury trial in the Southern District of New York.

    Natasha Singh's testimony in the *Riddick* case was critical for the government. She provided the only evidence linking direct conversations between Steve Riddick and Douglas Shyne, the alleged mastermind of the scheme. *See* Testimony of Natasha Singh, p. 227-228, 232-233, 237-240, Exhibit B. Moreover, she was the only government witness who testified to a false-exculpatory that Mr. Riddick provided to both bank investigators and law enforcement. *Id*. at 237-239. She also testified to knowing that Steve Riddick's wife's account had been frozen following the deposit of the $375,000 check and that Riddick's wife was upset. *Id*. at 280-281.

Page Two
October 26, 2007

These were facts heavily disputed by the defendant and Singh was the only government witness to provide this proof.

The government never provided the *Bartee* indictment to counsel as *Brady*, *Giglio* or 3500 material. See Affidavit of Bryan Hoss, Exhibit C. The government also failed to provide the "unlawfully obtained checks" discussed in the *Bartee* indictment or assuming that the Bartee case involved doctored invoices, the doctored invoices were never provided in discovery either. *Id.* Therefore, at the time of Riddick's trial in April/May 2007, counsel was unaware of the *Bartee* indictment, unaware of the *Bartee* checks, and unaware of the *Bartee* doctored invoices if they exist.

More importantly, the government never charged Natasha Singh with the *Bartee* "unlawfully obtained checks." The government has never provided Riddick with any information explaining why Singh was not charged in the *Bartee* case nor provided any agreement between the government and Singh regarding the *Bartee* checks. At the time of Riddick's trial, counsel did not know these facts and was under the distinct impression that Singh had pled guilty to her involvement in all of the fraudulent checks.

In fact, Natasha Singh testified in *Riddick* that she had pled guilty to all the checks in which she was involved. She stated, "No. It makes me sick with everything on paper, everything together during the whole years that I have been doing it. It makes me sick to see – I know better why this is—I can't believe it was me." See Testimony of Natasha Singh, p. 478-479, Exhibit B.

Even more alarming, co-counsel, Mr. Kelleher inquired as follows:

Q: How do you know the clothes you are wearing are not part of the fraud?
A: I have had these clothes a long time since I was working with Allstate.
Q: You remember that outfit but you can't remember what you did with the $180,000 that you got from the Morgan Stanley deal?
A: Yes.
Q: *How many other checks did you—big checks did you participate with Shyne and Toybe?*
A: *I don't know the number. I don't remember.*
Q: *You pled guilty to all of them, didn't you?*
A: *Yes.* But I don't remember the back of my head the total amount of the checks. It's a lot. I don't remember. *Id.* at 499.

At no point during this Q & A, did the Government ever object or clarify this testimony. In addition, she estimated that she stole between three (3) to five (5) million dollars. *Id.* But, Agent Rosenblatt estimated her take at a fraction of that amount.

Page Three
October 26, 2007

      First, Riddick respectfully submits that the Prosecution should have disclosed the existence of the *Bartee* indictment, the checks involved in that scheme and any subsequent doctored invoices in that case. Second, Riddick submits that Natasha Singh committed perjury in testifying that she had pled guilty to all of the unlawfully obtained checks. And third, the simple fact that the government did not require her to plead guilty to the *Bartee* checks begs the question, what deal did she actually have with the government? At the very least, the jury should have been aware that (1) she had not pled guilty to all of her checks; and (2) the government was not going to require her to plead guilty to those checks.

      Due process requires that prosecutors disclose evidence that is both favorable to the accused and "material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963). Material impeachment evidence falls under the *Brady* rule. *See Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972)(In *Giglio*, the United States Supreme Court found a *Brady* violation where government failed to disclose a promise not to prosecute a cooperating witness on whom the government's case against defendant "almost entirely" depended and the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case). A failure to disclose violates *Brady* and *Giglio*, but all such failures do not require that a case be retried. A new trial is not required if the undisclosed matter is "not likely to have changed the verdict." United States v. Keogh, 391 F.2d 138, 148 (2d Cir.1968), quoted in *Giglio*. But, a new trial is required if the false testimony could have affected the judgment of the jury. *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). The United States Supreme Court in *Napue* noted that "[t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence ...," *Napue*, 360 U.S. at 269. The 2nd Circuit has held that a new trial should be granted only if the evidence is material to the verdict, the defense could not with due diligence have been discovered before or during trial, and is not cumulative. *United States v. Wong*, 78 F.3d 73, 79 (2d Cir.1996); *United States v. Sasso*, 59 F.3d 341, 350 (2d Cir.1995).

      "Whether the introduction of perjured testimony requires a new trial initially depends on the extent to which the prosecution was aware of the alleged perjury." *United States v. Damblu*, 134 F.3d 490, 493 (2d Cir.1998). If the prosecution "knew or should have known of the perjury, a new trial is warranted if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Wong*, 78 F.3d 73, 81 (2d Cir.1996); *accord United States v. Wallach*, 935 F.2d 445, 456 (2d Cir.1991), *cert. denied*, 508 U.S. 939, 113 S.Ct. 2414, 124 L.Ed.2d 637 (1993). Where the government "knowingly permitted the introduction of false testimony reversal is 'virtually automatic.' " *Wallach*, 935 F.2d at 456 (quoting *United States v. Stofsky*, 527 F.2d 237, 243 (2d Cir.1975), *cert. denied*, 429 U.S. 819, 97 S.Ct. 65, 66, 50 L.Ed.2d 80 (1976)). However, "[e]ven assuming ... that the government knowingly introduced the perjured testimony ... where independent evidence supports a defendant's conviction, the subsequent discovery that a witness's testimony at trial was perjured will not warrant a new trial." *Wong*, 78 F.3d at 82; *see also United States v. Reyes*, 49 F.3d 63, 68 (2d Cir.1995) (affirming the district court's alternative holding that newly discovered evidence did not warrant

Page Four
October 26, 2007

a new trial because the new evidence did not directly refute a witness's testimony against the defendant and because another witness provided even greater inculpatory evidence). On the other hand, if the government "was unaware of the perjury at the time of trial, a new trial is warranted only if the testimony was material and the court [is left] with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted." *Wong*, 78 F.3d at 81 (internal quotation marks omitted) (alteration in original); *accord Wallach*, 935 F.2d at 456.

In the present case, the *Bartee* indictment was filed in 2006, well before Riddick's trial date. The same prosecutors tried *Bartee*. Why wasn't the indictment provided to defense counsel? Why weren't the checks involved in *Bartee* provided to defense counsel? Where are the doctored invoices? The defendant clearly had a decent amount of impeachment material to cross-examine Natasha Singh, but the jury was left with the incorrect and misleading impression that she had pled guilty to everything, when in fact; she hadn't and for whatever reason, had been given a pass by the government.

Riddick submits that her credibility was the critical link in the government's case in chief tying Riddick to Douglas Shyne, the mastermind. There were no other witnesses directly linking Riddick to the hub of the conspiracy, Douglas Shyne. She was it.

Respectfully, in light of the clear due process violation, the *Brady* and *Giglio* violation and for other good cause, the Defendant submits that this Court should enter a judgment of acquittal or in the alternative, grant the Defendant's motion for a new trial.

Sincerely,

DAVIS & HOSS, PC

Bryan H. Hoss

BHH:kb
Enclosures

cc:   Danya Perry, AUSA
      Bruce Barket
      Denis Kelleher
      Thomas Nooter