

C. Leland Davis
lee@davis-hoss.com

Davis & Hoss, PC
ATTORNEYS AT LAW

Bryan H. Hoss
bryan@davis-hoss.com

November 19, 2007

Sarah K. Anderson
United States Probation Officer
Southern District of New York
233 Broadway, 6th Floor
New York, NY 10279

Re: *United States v. Steven Riddick*, Docket No. S4-05-CR-1067 (KMK)

Dear Ms. Anderson:

Please accept this letter on behalf of the Defendant, Steve Riddick, as his objections to the Presentence Investigation Report dated September 21, 2007. In addition, please accept this letter as a Sentencing Memorandum requesting a below the guideline range sentence in light of the factors enumerated in 18 U.S.C. § 3553(a). I have attached letters in support of Mr. Riddick as exhibits. I am providing to you the original letters. Please advise whether I should forward a copy to Judge Karas.

The Defendant submits four objections to the PSR as follows:

1. The Defendant objects to the 18 level enhancement for a loss calculation in excess of 2.5 million pursuant to U.S.S.G. § 2B1.1;
2. The Defendant objects to the one point enhancement for Mr. Riddick's criminal history for a conviction for failure to appear;
3. The Defendant objects to any enhancement for obstruction of justice alleged in the Government's response, but not included in your PSR;
4. The Defendant submits that he should receive a minimal participant and/or a minor role reduction pursuant to U.S.S.G. § 3B1.2.

**OBJECTION #1:** The PSR calculates the loss against Steve Riddick in excess of $2.5 million dollars. The intended loss properly attributable to Steve Riddick should be $905,000, the amount of the three (3) checks deposited into his account plus $1,000,000, the amount of the two (2) checks deposited into Nathaniel Alexander's account. Riddick is not responsible for the intended loss that he did not aid or abet and was not part of jointly conducted criminal activity reasonably foreseeable to him in furtherance of the scope of the criminal activity in which he joined pursuant to U.S.S.G. § 1B1.3. Respectfully, only 16 levels should be added.

In *United States v. Studley*, 47 F.3d 569, 575-575 (2nd Cir. 1995), the Second Circuit in a case involving a fraudulent telemarketing scheme discussed the district court's role in sentencing a defendant on the basis of criminal activity conducted by co-conspirators. The Second Circuit stated that a district court must make a particularized finding as to whether the activity was

foreseeable to the defendant. *Id.* at 574. The illustrations in *Studley* reveal the following principles: (1) "a defendant's knowledge of another participant's criminal acts is not enough to hold the defendant responsible for those acts. It also demonstrates that a relevant factor in determining whether activity is jointly undertaken is whether the participants pool their profits and resources, or whether they work independently;" (2) "that another relevant factor in determining whether activity is jointly undertaken is whether the defendant assisted in designing *and* executing the illegal scheme;" and (3) "the fact that the defendant is aware of the scope of the overall operation is not enough to hold him accountable for the activities of the whole operation. The relevant inquiry is what role the defendant agreed to play in the operation, either by an explicit agreement or implicitly by his conduct." *Studley*, 404 F.3d at 575.

In the present case, the government failed to prove that Riddick knew of the other checks involved in the conspiracy. There is absolutely no proof that Riddick ever pooled his profits and resources with any co-defendant. Rather, the proof is merely that Riddick worked independently of the other individuals by depositing the checks and forwarded blank checks to an out-of-state address. The government also failed to prove that Riddick "designed" any scheme. Rather, the masterminds behind this plot readily admitted that this was designed by Douglas Shyne and Natasha Singh. Lastly, the Defendant only played a limited role by depositing the checks into his account and sending out blank checks to an out of state address. The government failed to introduce any explicit agreement by Riddick, but rather introduced evidence through bank records of his conduct. These factors in Studley weigh in favor of this Court finding a loss of less than $2.5 million dollars.

**OBJECTION #2:** The Defendant objects to the assessment of one criminal history point for his conviction for Failure to Appear. Under U.S.S.G. § 4A1.2(a)(1), a "prior sentence" means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial or plea of nolocontendere, for conduct not part of the instant offense. In the present case, the PSR indicates that the Defendant was found guilty in "abstentia." There was no guilty plea, trial or plea of nolocontendere in that case. Moreover, it appears that the Defendant's Sixth Amendment right to counsel had been violated in that there was allegedly a finding made without the Defendant's presence or without an attorney appointed for the Defendant.

In *United States v. Stapleton*, 316 F 3rd 754, (8th Cir. 2003), the Eighth Circuit found that when the Defendant showed it was more likely than not that he was convicted without the benefit of counsel, the conviction should not be counted in criminal history.

Respectfully, in the present case, the record appears that the Defendant was convicted in violation of his Sixth Amendment right to Counsel. Therefore, this conviction should not be used to calculate his criminal history.

**OBJECTION #3:** The PSR does not assess obstruction of justice points against Riddick. The Government submits that the Defendant should be enhanced for obstruction of justice under U.S.S.G. § 3C1.1. The government is relying upon 3 documents provided to them, but not introduced at trial, and the Defendant's affidavit filed in support of his Motion to Suppress. First, the government has no proof that these documents were created after the charges were filed in this case. In fact, Defendant's counsel showed one of the two emails to

Mahmoud Abul who testified that he may have received the email, but he could not recall. Because, he was unable to identify the document, it was not introduced at trial. The other document is a contract drafted and signed by Steve Riddick. It was never admitted at trial, but rather provided to the Government based upon their requests for discovery to defense counsel. Counsel was under a duty to provide this document to them, and now, they claim that that amounts to obstruction of justice.

Lastly, the government relies upon Riddick's affidavit in which he states that he did not initiate the three way phone call from an Arkansas holding cell to agents in New York. The proof at the motion to suppress was that it was in fact the agent himself who initiated the three way call using his own telephone. Riddick was in custody and had no access to any telephone. Riddick never stated in his affidavit that he did not request to talk with the lead investigators.

Respectfully, the government's application should be denied.

**OBJECTION #4:** Lastly, the Defendant moves this Court to apply U.S.S.G. § 3B1.2 for minimal participant and/or minor role reduction. U.S.S.G. § 3B1.2 provides that based upon the Defendant's role in the offense, his offense level should be decreased "(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels; (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels; In cases falling between (a) and (b), decrease by 3 levels." Application Note (A) provides that this section applies a range of adjustments for defendants who are "substantially less culpable than average participant."

In making this "highly fact-specific" determination, *United States v. Shonubi*, 998 F.2d 84, 90 (2d Cir.1993), a district court looks to factors such as "the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." *United States v. Yu,* 285 F.3d 192, 200 (2nd Cir.2002).

In the present case, the Defendant while he was in Miami, had two checks deposited into his own personal account by someone else. He then signed several blank checks and mailed those checks to a single address outside the State of Virginia. The Defendant had no relationship with anyone who received any check. Moreover, there is no proof that the Defendant was aware of the nature and scope of the enterprise. Riddick played no role in selecting the individuals who would later deposit these checks. He played no role in obtaining or counterfeiting the stolen checks. The Defendant did keep a commission, however, his role in the overall scheme was minor. Anyone could have stepped in Riddick's shoes. Had he not been available, it is clear that Singh and Shyne would have found other victims/participants to deposit the stolen checks.

Respectfully, based upon his role, his was a minor and/or minimal participant and should receive a downward departure accordingly.

## SENTENCING MEMORANDUM

The Defendant, Steve Riddick, submits this sentencing memorandum to aid this Court in sentencing and requests a sentence below his applicable guideline range pursuant to 18 U.S.C. § 3553(a) which provides the following:

Factors to be considered in imposing a sentence— the court shall impose a sentence sufficient, *but not greater than necessary*, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed shall consider—
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant;
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and sentencing range established for—
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
(5) any pertinent policy statement---
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;
(7) the need to provide restitution to any victims of the offense.

**(1)    NATURE AND CIRCUMSTANCES OF THE EVENTS**

The Defendant was, based upon the jury's verdict, involved in this brief scheme over a period of approximately 45 days. At best, it involved the Defendant instructing his business manager to deposit two checks and depositing one himself and subsequently sending by FedEx various unsigned checks in varying amounts. Only one check for $375,000 cleared the bank account and the Defendant kept approximately $160,000-$175,000 of the money. Prior to Court, the Defendant entered into a civil agreement with the bank to pay this money back. It was the other, more sophisticated fraudsters, Natasha Singh, Doug Shyne, and others, who stole checks, altered checks, and recruited other individuals. Moreover, when first approached by bank investigators, the Defendant ceased all communications with the co-conspirators, gave full statements to the bank investigators and law enforcement, and provided all consistent statements to bank investigators and law enforcement. Lastly, it was the bank that did in fact clear the $375,000 check after twenty days of processing the check. The bank had every opportunity to contact the maker or the other banks involved to secure the validity of the check, but failed to properly investigate the check. The guidelines do not take into account that the 2 out of 3 of these checks did not clear and that just over a 1/3 of the loss calculation actually was paid to the Defendant.

Given the brief period of time of the Defendant's involvement, the Defendant's limited role in this conspiracy, and his willingness to give statements to investigators and law enforcement, the Defendant submits that the nature and circumstances of the events of this case should weigh in favor of a sentence below the applicable guideline range.

**(2)   HISTORY AND CHARACTERISTICS OF THE DEFENDANT**

The Defendant would show that the Defendant's history and characteristics also warrant a below guideline sentence. In addition to the letters that follow, the Defendant has earned the following awards and commendations: CIAA Conference Champion, NCAA Division II Champion, World University Gold Medalist 1973, Pam American Gold medalist 1975, Olympic Gold Medalist 1976, Athelete of the Year 1977, World Cup Gold Medalist 1977, World Cup Silver Medalist 1979, All American, Pennasula Hall of Fame, Hampton Roads African American Hall of Fame, Highest Citizen Award, Hampton, VA, Coach of the Year MEAC Conference 1998.

In support of the Defendant's history and characteristics, the Defendant submits the following exhibits:

A. Bob Washington, Virginia House of Delegates, Commendation for Outstanding Achievement in the XXI Olympics, signed Bob Washington, 9-10-1976.
B. James Hope, Mayor of Suffolk, Virginia, Commendation for Steve Riddick's Participation in the 1976 Summer Olympics.
C. City of Norfolk, Virginia Proclamation, signed by Mayor Vincent Thomas, September 10, 1976.
D. Commonwealth of Pennsylvania, Letter of Congratulations of Governer Milton J. Sharp, signed September 2, 1976.
E. Proclamation by James City County, Virginia regarding the exemplary achievements of Steven Riddick.
F. Letter to Steven Riddick from Richard A. Gephardt, House of Representatives, Congress of the United States, March 19, 1980.
G. Honorary letter from the Norfolk Sports Club, September 10, 1976;
H. Letter of congratulations from Mayor Marion Whitehurst, City of Chesapeake, VA, 9-10-1976;
I. Lists of awards and accomplishments by Steven Riddick
J. Lists of international sports training athletes from 2006-2007
K. List of athletes coached from 1995 to the present
L. Letter of support from Grafton O. Ifill III
M. Letter of support from Tonique Williams Darling
N. Letter of support from Myriam Mani
O. Letter of support from Christopher Brown
P. Letter of support from Jean Woodley
Q. Letter of support from Maurice Pearce
R. Letter of support from Aziz Zakari

Without restating the contents of these letters, these letters paint a picture of Steve Riddick that the court was not able to see from the witnesses called at trial. They depict an honest, caring, and trustworthy individual who instills proper values in his athletes in the highest level of coaching in world track and field. They show that he is not just a coach, but a mentor, and advisor and has been instrumental not only in building careers, but in guiding these athletes in being a positive role model for them in their professional career. In particular, Miriam Moni notes that Steve Riddick adopted her after she came to the United States from Cameroon.

Respectfully, the Defendant submits that based on his background, history, and characteristics, this Court should sentence him to a non-guideline sentence.

### (3)    NEED FOR THE SENTENCE IMPOSED

While certainly the Defendant submits that the Court is given the difficult task of balancing the factors that include promoting respect for the law, providing just punishment, and reflecting the seriousness of the offense, the Defendant would submit that "the Court does not have to protect the public from further crimes of this Defendant." Moreover subsection (d) also does not apply in that he does not need educational or vocational training or other type of correctional treatment. The Defendant stands before the Court never having to serve any time in a jail cell. Respectfully, the Court must impose a sentence that is "sufficient, but not greater than necessary…" While a sentence of imprisonment or brief period of incarceration is warranted, the Defendant submits that the courts could meet its goals to reflect the seriousness to promote respect, to provide just punishment, by a sentence far less than the 78-96 months recommended in the current PSR.

### (4)    NEED FOR RESTITUTION

The Defendant respectfully submits that a lengthy sentence and incarceration would end his ability to earn an income and a living and would make it even more difficult to pay restitution back to the appropriate parties. Respectfully, restitution in this case should be ordered, but the Defendant submits that the smaller the jail sentence, the more likely he would be able to rejoin his athletes, make a sufficient living, and pay the money back as ordered.

### CONCLUSION

In conclusion, this Court has the clear authority to sentence Mr. Riddick below the applicable guideline range. The letters that he has attached, his background that has been noted by elected leaders from the community, the support from his family and friends clearly show and provide this Court with a basis for a lower sentence. Respectfully, Mr. Riddick is asking this Court to consider all of the factors mentioned and sentence him below the applicable guideline range.

Sincerely,

**DAVIS & HOSS, P.C.**

Bryan H. Hoss

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

This the 19th day of November, 2007.

Bryan H. Hoss